Wanda ALLEN, etc., et al.

v.

Kalman HETTLEMAN, etc., et al.

Civ. No. K–79–791.

United States District Court,
D. Maryland.

July 23, 1980.

Nancy Ebb, Dennis W. Carroll, Jr. and James J. Lyko, Legal Aid Bureau, Inc., Baltimore, Md., for plaintiffs.

Stephen H. Sachs, Atty. Gen., Maryland, and John K. Anderson and Margaret E. Rawle, Asst. Attys. Gen., Baltimore, Md., for defendants.

**FRANK A. KAUFMAN, District Judge.**

■ In this case several female plaintiffs and the Baltimore Welfare Rights Organization (BWRO) challenge the validity of a Maryland AFDC[1] regulation pursuant to which a minor mother (under 18) and her child are considered as two members of the AFDC unit of the caretaker relative of the minor mother.[2] The regulation results in less money per capita being paid for the minor mother and her child who live in the larger unit than would be paid if the minor mother and her child lived by themselves. Defendants are two Maryland officials charged with the administration of Maryland's AFDC program. Plaintiffs seek injunctive relief and declaratory relief.[3]

### The Facts

The parties have submitted this case for decision on an agreed statement of facts.

1. AFDC, *i. e.*, Aid to Families with Dependent Children.

2. At the time this case was instituted, there were three individual female plaintiffs. The youngest of the three turned 18 on June 13, 1980. However, on May 1, 1980, counsel for plaintiffs filed motions on behalf of Jeanette Sabb and Cornelia Manning to intervene as party plaintiffs. Those motions were granted on June 5, 1980, without opposition from defendants. Counsel also agreed that the pleadings filed in this case would apply to the intervening plaintiffs as if those intervening plaintiffs had been in this case from the beginning, *i. e.*, as if all pleadings on behalf of plaintiffs had been filed for the intervening plaintiffs and as if all pleadings by defendants had been filed vs. the intervening plaintiffs. Jeanette Sabb will turn 18 on August 21, 1981; Cornelia Manning will turn 18 on December 14, 1980. Thus, as of the date of this opinion, there are two individual plaintiffs who are under 18 years of age. In addition to the two individual plaintiffs, there is an organizational plaintiff, the Baltimore Welfare Rights Organization (BWRO), which has at least three members who qualify as individual plaintiffs herein.

3. Originally, plaintiffs sought class certification under Federal Civil Rule 23(b)(2). However, plaintiffs withdrew their quest for class certification, stating that they had desired class certification in order to protect against possible mootness if all named plaintiffs should have become 18 years of age prior to termination of this litigation, but had subsequently decided that the presence of the Maryland corporation, as a party plaintiff, would assure protection against such possible future mootness. Defendants have stated their agreement with that legal position of plaintiffs.

Additionally, defendants have not objected to the joinder of two additional female plaintiffs, both under 18, before the filing of this opinion, whom the original plaintiffs were permitted by this Court to add in order to provide further protection against mootness. *See* n. 2 *supra*.

Actually, such further protection would seem unneeded insurance in view of the standing of BWRO as "an organization whose members are injured [and who thus] represent those members in a proceeding for judicial review." *Sierra Club v. Morton*, 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972). The membership of BWRO includes a minimum of three mothers under 18 years of age and living, along with their own respective children, with their older relatives. Those under-18-years-of-age mothers are each adversely affected by the rule under attack in this case. If the members of an organization "could have brought suit in their own right," that organization has standing. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 40, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976). The two additional plaintiffs have such standing. So, accordingly, does the BWRO.

All of the original named plaintiffs will, if the two additional plaintiffs herein should be successful, receive the benefit of any relief awarded.

The relevant and material facts, which are not in dispute, are as follows:

1. The two additional plaintiffs, Jeanette Sabb and Cornelia Manning, are each under 18 years of age. Each lives in Baltimore, Maryland with a child or children of her own in a household which includes her mother and siblings. The mother of each of said plaintiffs receives a monthly AFDC grant. The assistance unit of which each plaintiff is a member consists of five and six persons, respectively. Each plaintiff mother feeds her respective child or children, changes their diapers, bathes them, takes them to the doctor, and gets up with them at night.

2. In November, 1979, plaintiff Cornelia Manning inquired of her social worker concerning the availability of a separate grant for herself and her children. The social worker responded that plaintiff Cornelia Manning was not old enough to receive such a separate grant. Had plaintiff Cornelia Manning been eligible for such a separate grant, she would have received more per month for herself and her children than her pro rata share of the AFDC payment to her mother. That is because, under the Maryland rules for calculating AFDC payments, the per capita grant decreases as the size of the assistance unit increases.

3. The Baltimore City Department of Social Services indicated that the individual plaintiffs could not receive separate grants because of the applicable Maryland Regulations.[4]

4. In deciding who is a member of the AFDC unit, defendants do not require a determination of which relative cares for the child.

5. Defendants, as a matter of policy and pursuant to the Maryland regulations, include minor mothers in the assistance unit of the relative with whom they reside. The children of minor mothers are also included in that assistance unit. Mothers under 18 are considered to be living with a relative when they reside in their own mother's home, and are thus included in the AFDC unit of their own mothers and are not caretakers of their own units.

### Jurisdiction

Plaintiffs seek relief under 42 U.S.C. § 1983, and its jurisdictional counterpart, 28 U.S.C. § 1343, alleging that certain Maryland regulations violate the Supremacy Clause (hereinafter "statutory claim") and the Equal Protection and Due Process Clauses (hereinafter "constitutional claims"). The statutory claim is based on plaintiffs' contention that the Maryland regulations violate certain sections of the Social Security Act and certain applicable federal regulations.

In *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), the Supreme Court held that a district court does not have jurisdiction to decide a claim which alleges as its sole subject matter jurisdictional base that a state AFDC regulation violates the Supremacy Clause. However, plaintiffs, in addition to their Supremacy Clause argument, contend that the Maryland regulations violate the Equal Protection and Due Process Clauses. If those claims are substantial, this Court has jurisdiction with respect to them and also is enabled to assert pendent jurisdiction over the statutory claim. If they are not substantial, no such jurisdiction or pendent jurisdiction exists. *Hagans v. Lavine*, 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974). However, even if plaintiffs turn out eventually to be losers on the merits, that does not mean that their constitutional claims are insubstantial. *Kimble v. Solomon*, 599 F.2d 599 (4th Cir.), *cert. denied*, 444 U.S. 950, 100 S.Ct. 422, 62 L.Ed.2d 320 (1979). In *Kimble*, the Fourth Circuit held that a constitutional claim does not have to be victorious to confer jurisdiction upon a federal district court. *Kimble* involved a claim that state regulations and policies concerning medicaid had been made without procedurally complying with federal regulations. Judge Winter, writing after

---

4. *See* n.6 *infra*.

*Chapman* had been decided, commented as follows (at 602 n.2):

> As an alternative basis for jurisdiction, the district court determined that it had jurisdiction under § 1343(3) over plaintiffs' constitutional due process claim and then asserted pendent jurisdiction over the claim of violation of the federal notice regulations. This procedure was approved by the Supreme Court in *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Although plaintiffs' constitutional claim was ultimately rejected by the district court, its discussion of the issue demonstrated that the claim was not "frivolous or so insubstantial as to be beyond the jurisdiction of the District Court," *id.* at 539, 94 S.Ct. at 1380 * * *.

Thus, prior to exercising jurisdiction first over plaintiffs' statutory claim and then, if appropriate, over the ultimate merits of plaintiffs' constitutional claims, this Court must decide whether or not those constitutional claims are frivolous or insubstantial—and not whether or not plaintiffs will be victorious on those constitutional claims.

The question of substantiality seemingly depends in part upon whether the constitutional contentions raised by plaintiffs have been decided before either by the Supreme Court or by the United States Court of Appeals for the Fourth Circuit. In *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), a § 1983 challenge was directed to an AFDC regulation of the State of New York which plaintiffs contended violated the Supremacy Clause and the Equal Protection Clause. The Supreme Court held that the constitutional claim was sufficiently substantial to enable the district court to reach the Supremacy Clause (statutory) claim. In reaching that conclusion, Mr. Justice White wrote as follows (at 538–40, 94 S.Ct. at 1380):

> The District Court's jurisdiction, a matter for threshold determination, turned on whether the question was too insubstantial for consideration.

> * * * * * *

> * * * We are unaware of any cases in this Court specifically dealing with this or any similar regulation and settling the matter one way or the other. Nor is it immediately obvious to us from the face of the complaint that [the regulation] was so patently rational as to require no meaningful consideration. [Footnote omitted.]

One of the issues which the within case presents, according to plaintiffs, is the question of whether the challenged Maryland regulation herein violates the Equal Protection and Due Process Clauses by treating mothers under 18 who live at home differently from mothers under 18 who live on their own and also differently from mothers over 18 who live at home and/or by creating an irrebuttable presumption that mothers under 18 who live at home cannot be caretaker relatives according to the federal statutory definition of that term. Those precise questions have not been decided in the Supreme Court or in the Fourth Circuit.

In *Doe v. Klein*, 599 F.2d 338 (9th Cir. 1979), plaintiff had applied for AFDC benefits provided by the State of Idaho. Plaintiff had so done when she was 16, unmarried, pregnant and living at home with her parents. Her parents were seemingly ineligible for AFDC benefits as to their daughter. The plaintiff's application was ultimately rejected, but after her child was born, she reapplied. Her application was granted to the extent of her child's needs. When she turned 18, the age of majority in Idaho, the AFDC grant was increased to cover her needs, but excluded a housing and utility allowance because plaintiff continued to live with her parents.

Plaintiff asserted two constitutional claims and one statutory claim. She argued that the Idaho regulation, as applied with regard to her initial claim, violated due process by establishing an irrebuttable presumption that her parents were meeting her needs. She also contended that that regulation violated equal protection because the initial denial of AFDC benefits and subsequent limitation were based on her age and residence, and on the legitimacy of

her child. The statutory claim was that the Idaho AFDC regulations were more restrictive than the Social Security Act and therefore violated the Supremacy Clause.

The District Court reached the merits and entered summary judgment for defendants. The Court of Appeals reversed and remanded for the District Court to dismiss the case for want of jurisdiction on the grounds that the constitutional claims raised by plaintiff were not sufficiently substantial under *Hagans* to confer jurisdiction upon the district court. The due process claim was held without merit because the Department had specifically found that plaintiff's parents were in fact providing for her needs. Moreover, in Idaho, some unemancipated minor (*i. e.*, under 18 years of age) mothers received AFDC grants for themselves and their children and some just for their children. That seemingly indicated that applications were adjudicated individually. The Ninth Circuit concluded that the equal protection claims were equally without merit, since age and residency were merely taken as indicating possible need, as was marital status, and stated (at 341):

It is apparent that appellant's alleged constitutional claims are asserted in order to obtain jurisdiction over her statutory claim. But because appellant's constitutional claims were not "of sufficient substance to support federal jurisdiction," there can be no pendent jurisdiction over her statutory claim in federal court. * *

■ The contentions raised by plaintiffs in the within case are distinguishable from those raised in *Doe*. In *Doe*, the Ninth Circuit appears to have relied upon the individualized decisions made by the Department in concluding that any presumptions created by the Idaho rule were rebuttable. That is not the situation herein. Herein, the contention is that every minor mother living with her caretaker relative is treated alike, and no such mother is given any opportunity to show that she is the proper caretaker relative for her child or that she is not in fact receiving support from the caretaker relative. That was not the situation in *Doe*: in *Doe*, "[t]he Department's practice in applying its regulations contradicts the claim that *all* unwed minor mothers living with their parents are denied assistance for their own needs. * * * 'There was a specific finding that Jane Doe's parents * * * were providing for her needs.'" 599 F.2d at 340 (emphasis in original). Thus, the contention that Idaho acted on the basis of any irrebuttable presumption had no merit at all, since Idaho did not so act. In this case, neither of the two additional individual plaintiffs receives Maryland AFDC benefits for herself and her child simply because she and her child constitute a two-member-family-unit. Each of them is denied such benefit and such status *solely* because she is under 18 and living with her caretaker relative. Further, Maryland provides no individual adjudications under such circumstances.

As discussed *infra*, this Court, after careful consideration, cannot accept the validity of plaintiffs' constitutional claims. But those claims are not frivolous. Accordingly, under *Hagans*, this Court has subject matter jurisdiction.[5]

### The Merits

Having determined that subject matter jurisdiction exists, this Court proceeds first

---

5. *Cf. Holley v. Lavine*, 605 F.2d 638, 646–47 (2d Cir. 1979).

In *Maine v. Thiboutot*, —— U.S. ——, 100 S.Ct. 2502, 65 L.Ed.2d —— (1980), the Supreme Court held that § 1983 encompasses claims based on purely statutory violations of federal law. In *Thiboutot*, welfare benefits were involved and the review by the Supreme Court was of determinations made by the Supreme Judicial Court of Maine. Writing for the majority, Mr. Justice Brennan stated in footnote 6:

There is *no* inherent illogic in construing § 1983 more broadly than § 1343(3) was construed in *Chapman* * * *. It would only mean that there are statutory rights which Congress has decided cannot be enforced in the federal courts unless 28 U.S.C. § 1331(a)'s $10,000 jurisdictional amount is satisfied.

Since a substantial equal protection—due process argument exists herein and this Court may therefore take pendent jurisdiction over plaintiffs' statutory claims, there is no need for this Court to reach the question of whether any alternative source for jurisdiction over plaintiffs' statutory claims exists under *Thiboutot*.

to examine the statutory claim raised by plaintiffs. *Hagans v. Lavine*, 415 U.S. at 543, 94 S.Ct. at 1382.

Plaintiffs contend that Code of Maryland Regulations (COMAR) 07.03.02.02 B and G violate the Supremacy Clause because they are incommensurate with federal law and regulations.[6]

Plaintiffs specifically assert that Maryland has established an age requirement for the status of caretaker relative; that federal law creates no such status; and that Maryland practice, in interpreting the applicable federal statutes and regulations and the applicable Maryland regulations, denominates, in the instances involved in this case, as the caretaker relative, someone who is not the mother or the person primarily responsible for the day-to-day care of the child. In that regard, plaintiffs argue that the minor mother should be treated as the caretaker relative when the minor mother is the person in fact responsible for the care of the child, irrespective of the fact that the minor mother continues to live with the person who was, at least prior to the birth of her child, the caretaker relative of the minor herself.[7]

**6.** Those state regulations, in relevant part, provide:

.02 The AFDC Assistance Unit.

\* \* \* \* \* \*

B. Composition. The assistance unit shall include the following persons when living with the applicant and for whom eligibility can be established:

\* \* \* \* \* \*

(2) All of a parent's own children under 18 years old, including any unborn children, regardless of whether assistance is requested on their behalf \* \* \*.

\* \* \* \* \* \*

G. All related children living together in one household with the same caretaker relative and not otherwise permissibly excluded are included in one assistance unit.

Plaintiffs claim those state regulations conflict with 42 U.S.C. §§ 602 and 606 and 45 C.F.R. § 233.90. Those statutes, in relevant part, read as follows:

§ 602. State plans for aid and services to needy families with children \* \* \*

(a) A State plan for aid and services to needy families with children must \* \* \* (10) provide \* \* \* that all individuals wishing to make application for aid to families with dependent children shall have opportunity to do so, and that aid to families with dependent children shall \* \* \* be furnished with reasonable promptness to all eligible individuals \* \* \*.

§ 606. Definitions.

When used in this part—

(a) The term "dependent child" means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) under the age of twenty-one and \* \* \* a student \* \* \*;

\* \* \* \* \* \*

(c) The term "relative with whom any dependent child is living" means the individual who is one of the relatives specified in subsection (a) of this section and with whom such child is living \* \* \* in a place of residence maintained by such individual (himself or together with any one or more of the other relatives so specified) as his (or their) own home.

45 C.F.R. § 233.90, in relevant part, provides:

§ 233.90 Factors specific to AFDC.

\* \* \* \* \* \*

(c) *Federal financial participation.* (1) Federal financial participation under title IV–A of the Social Security Act in payments with respect to a "dependent child", as defined in section 406(a) of the Act, is available within the following interpretations:

\* \* \* \* \* \*

(v) *"Living with [a specified relative] in a place of residence maintained* \* \* \* *as his* \* \* \* *own home".* (A) A child may be considered to meet the requirement of living with one of the relatives specified in the Act if his home is with a parent or a person in one of the following groups:

(*I*) Any blood relative, including those of half-blood, and including first cousins, nephews, or nieces, and persons of preceding generations as denoted by prefixes of grand, great, or great-great.

\* \* \* \* \* \*

(B) A home is the family setting maintained or in process of being established, as evidenced by assumption and continuation of responsibility for day to day care of the child by the relative with whom the child is living. A home exists so long as the relative exercises responsibility for the care and control of the child \* \* \*.

**7.** The combination of those federal statutes and federal and Maryland regulations can hardly be

Under the Maryland program a minor mother who continues to live with her caretaker relative is not considered herself to be the caretaker relative of her child. Rather, as long as the minor mother lives with the person who was designated the minor mother's caretaker relative, that person is considered the caretaker relative of both mother and child until the minor mother reaches the age of 18. Thus, the minor mother and her child are counted as two members of the larger AFDC unit for which benefits are paid to the minor mother's caretaker relative. Since the amount paid per person in the unit decreases as the number of people in the unit increases, the per capita sum for the mother and child is lower if they are counted as two members of a larger unit than it would be if they were considered to be an independent unit. Further, under the Maryland program, the caretaker relative of the minor mother receives and has control over the AFDC funds. If the minor mother moves out of her caretaker relative's residence, she receives AFDC money for herself and her child as an independent unit and she has control over that money. Furthermore, in any event, as soon as the minor mother turns 18, she receives AFDC money for herself and her child irrespective of where she lives, even if she should fit the federal definition of a dependent child because she is a student.[8]

The Social Security Act and accompanying regulations establish a framework within which each of the states may set up AFDC programs.[9] Before any state may commence any AFDC program, the program as proposed by that state must gain the advance approval of the Secretary of the Department of Health, Education and Welfare. 42 U.S.C. § 601. The Maryland plan was apparently so approved. In addition, this Court has solicited and received the views of the Secretary of HEW on the issues involved herein. In so responding the Secretary has stated that "[i]t is the position of the Secretary of Health, Education and Welfare that the challenged portion of the Maryland regulation is fully permissible under Federal law and regulations" and that—

The composition of an AFDC assistance unit is not defined in Federal law. So too, the budgeting methods a state may use to determine the level of an AFDC payment to a family is not mandated by Federal requirements. Therefore, states are free to prescribe the composition of an AFDC assistance unit and the budgeting method they will use for such unit. In COMAR 07.03.02.02 B(2) and G. Maryland has provided that a minor parent with a child who are both living with a recipient caretaker relative over 18 must be included in the AFDC grant of the relative. Such a definition of the state's assistance unit does not conflict

described as a model of clarity. However, they seemingly have been uniformly interpreted and administered by the Maryland authorities. Further, no question is seemingly raised herein by the federal Government as amicus curiae with regard to those interpretations by Maryland. *See* pp. 861–862 *infra.*

8. *See* the discussion *infra* at p. 870 & n.20.

9. In *Dandridge v. Williams,* 397 U.S. 471, 472–74, 90 S.Ct. 1153, 1155–1156, 25 L.Ed.2d 491 (1970) (footnotes omitted), Mr. Justice Stewart wrote:

Like every other State in the Union, Maryland participates in the Federal Aid to Families With Dependent Children (AFDC) program, 42 U.S.C. § 601 et seq. (1964 ed. and Supp. IV), which originated with the Social Security Act of 1935. Under this jointly financed program, a State computes the so-called "standard of need" of each eligible

family unit within its borders. See generally *Rosado v. Wyman,* 397 U.S. 397, [90 S.Ct. 1207, 25 L.Ed.2d 442] * * *. Some States provide that every family shall receive grants sufficient to meet fully the determined standard of need. Other States provide that each family unit shall receive a percentage of the determined need. Still others provide grants to most families in full accord with the ascertained standard of need, but impose an upper limit on the total amount of money any one family unit may receive. Maryland, through administrative adoption of a "maximum grant regulation," has followed this last course. * * *

* * * In general, the standard of need increases with each additional person in the household, but the increments become proportionately smaller. * * *

with any Federal requirement. In fact, Federal regulations anticipate that states will differ in defining their assistance units by providing that for purposes of recipient count and Federal financial participation in state AFDC expenditures, states *may*, but are not required to, count as two separate assistance units the family situations presented by each plaintiff herein. 45 C.F.R. § 237.50(b)(5). Maryland has chosen not to exercise this option. The fact that the state has not done so does not violate the Social Security Act. [Emphasis in original.]

" '[T]he interpretation of a statute by an agency charged with its enforcement is a substantial factor to be considered in construing the statute.' " *Miller v. Youakim,* 440 U.S. 125, 144, 99 S.Ct. 957, 969, 59 L.Ed.2d 194 (1979). The Secretary of HEW has indicated that the Maryland scheme does not violate applicable federal law and regulations. Such an indication, while not determinative, is entitled to some weight.

On several occasions, the Supreme Court has discussed the scope of a state's discretion in setting up AFDC programs. "A participating State may not deny assistance to persons who meet eligibility standards defined in the Social Security Act unless Congress clearly has indicated that the standards are permissive." *Miller v. Youakim, supra* at 202, 99 S.Ct. at 963. However,

> "There is no question that States have considerable latitude in allocating their AFDC resources, since each State is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program." *King v. Smith,* 392 U.S. 309, 318–19, [88 S.Ct. 2128, 2133–2134, 20 L.Ed.2d 1118] * * * (1968) * * *. So long as the State's actions are not in violation of any specific provision of the Constitution or the Social Security Act, appellants' policy arguments must be addressed to a different forum.

*Jefferson v. Hackney,* 406 U.S. 535, 541, 92 S.Ct. 1724, 1729, 32 L.Ed.2d 285 (1972). In the majority opinion, Mr. Justice Rehnquist

pointed out (at 545, 92 S.Ct. at 1731) after noting the requirement that AFDC be paid to all eligible individuals, that the prohibition in the Social Security Act against a state "creating certain exceptions to standards specifically enunciated" in the Social Security Act, "does not * * * enact by implication a generalized federal criterion to which States must adhere in their computation of standards of need, income, and benefits. Such an interpretation would be an intrusion into an area in which Congress has given the States broad discretion * *." (Footnote omitted.)

*Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), involved a challenge to Maryland's method of administering its AFDC program. The statutory argument in *Dandridge* was that the state regulations violated the Social Security Act by allocating fewer dollars per capita as the number of people in an AFDC unit increased and thus denied benefits to the younger children in a large family in violation of 42 U.S.C. § 602(a)(10). Plaintiffs contended that that regulation was inconsistent with the Social Security Act because the younger children were "just as 'dependent' as their older siblings under the definition of 'dependent child' fixed by federal law." *Id.* at 476–77, 90 S.Ct. at 1157 (footnote omitted). Furthermore, plaintiffs argued, the state ceiling placed on the amount that any one AFDC unit could receive "contravenes a basic purpose of the federal law by encouraging the parents of large families to 'farm out' their children to relatives whose grants are not yet subject to the maximum limitation." *Id.* at 477, 90 S.Ct. at 1157–1158.

Mr. Justice Stewart, writing for the majority, agreed with plaintiffs that the Maryland system reduced the amount available per capita to the largest families, and stated (at 477–78, 479–81, 90 S.Ct. at 1158–1159; footnotes omitted):

> It cannot be gainsaid that the effect of the Maryland maximum grant provision is to reduce the per capita benefits to the children in the largest families. Although the appellees [plaintiffs] argue

that the younger and more recently arrived children are totally deprived of aid, a more realistic view is that the lot of the entire family is diminished because of the presence of additional children without any increase in payments. * * * Whether this per capita diminution is compatible with the statute is the question here. For the reasons that follow, we have concluded that the Maryland regulation is permissible under the federal law.

*     *     *     *     *     *

The States must respond to this federal statutory concern for preserving children in a family environment. Given Maryland's finite resources, its choice is either to support some families adequately and others less adequately, or not to give sufficient support to any family. We see nothing in the federal statute that forbids a State to balance the stresses that uniform insufficiency of payments would impose on all families against the greater ability of large families—because of the inherent economies of scale—to accommodate their needs to diminished per capita payments. The strong policy of the statute in favor of preserving family units does not prevent a State from sustaining as many families as it can, and providing the largest families somewhat less than their ascertained per capita standard of need. Nor does the maximum grant system necessitate the dissolution of family bonds. For even if a parent should be inclined to increase his per capita family income by sending a child away, the federal law requires that the child, to be eligible for AFDC payments, must live with one of several enumerated relatives. The kinship tie may be attenuated but it cannot be destroyed.

The appellees rely most heavily upon the statutory requirement that aid "shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 602(a)(10) (1964 ed., Supp. IV). But since the statute leaves the level of benefits within the judgment of the State,

this language cannot mean that the "aid" furnished must equal the total of each individual's standard of need in every family group. Indeed the appellees do not deny that a scheme of proportional reductions for all families could be used that would result in no individual's receiving aid equal to his standard of need. As we have noted, the practical effect of the Maryland regulation is that all children, even in very large families, do receive some aid. We find nothing in 42 U.S.C. § 602(a)(10) (1964 ed., Supp. IV) that requires more than this. So long as some aid is provided to all eligible families and all eligible children, the statute itself is not violated.

Plaintiffs herein have raised many of the contentions raised by plaintiffs in *Dandridge*. For example, plaintiffs contend that the challenged Maryland program will put pressure on minor mothers to leave the residence of their caretaker relatives and live on their own in order to obtain higher benefits. *Dandridge* indicates that such a possible result is not sufficient to invalidate a state regulation as violative of federal law. Plaintiffs in this case also argue that it is impermissible for Maryland to treat the minor mother and her child as two members of the larger unit and thereby allocate less AFDC money to the unit. With regard to the latter part of that contention—that it is impermissible to pay less money per capita when the minor mother resides in a larger unit—*Dandridge* seemingly answers that argument by asserting that economies of scale are "inherent."

In *Dandridge*, Mr. Justice Stewart wrote that as long as "some aid is provided to all eligible families and all eligible children, the statute itself is not violated." *Id.* at 481, 90 S.Ct. at 1159. In the case at bar, all eligible families and children—including all eligible children under 18, a category which covers the minor mothers in this case—do receive some aid. That fact serves to distinguish this case from cases such as *Carleson v. Remillard*, 406 U.S. 598, 92 S.Ct. 1932, 32

L.Ed.2d 352 (1972),[10] and *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).[11] In both of those cases, the state regulations completely excluded persons who were eligible under federal law to receive AFDC benefits, and were for that reason invalid as conflicting with federal law and regulations.[12]

*Dandridge* does not specifically respond to plaintiffs' contention that the Maryland regulation is invalid because it does not allow a minor mother to be considered the caretaker relative of her child if the minor mother continues to live with her own caretaker relative after the birth of the child. That contention requires separate consideration herein.

The Social Security Act defines a dependent child as a child under 18 who lives with one of a list of relatives and who is, for certain reasons, needy. A minor mother who continues to live with her caretaker relative after the birth of her child fits that definition until she is 18. Thus, the Maryland regulation, in treating the minor mother as a dependent child, follows the definition of dependent child set forth in the Social Security Act.[13] There is nothing in that Act which indicates that a dependent child should be treated as an adult if that dependent child in turn has a child and takes care of that child.

Plaintiffs seemingly contend that the minor mother, regardless of where she lives, must be treated by Maryland as the caretaker of her child, as the head of a unit of two composed of herself and her child, and not as a dependent child. But that argument is in opposition to the terms of 42 U.S.C. § 606 which provided that when a person under the age of 21 lives at home with one or more caretaker relatives, she is herself a "dependent child."[14] It is also to be noted that if the minor mother who remains at home can demand under 42 U.S.C. § 606 to be deemed the caretaker of her child, a 16-year old sister who lives with her mother and other siblings and who in fact totally cares for her infant sister might also be able to make the same demand. In that context, it would seem that the federal statute contemplates that "a dependent child" whether or not she is a mother does not herself qualify to be a caretaker of another "dependent child" when both live in the same unit.

The Maryland regulations require that the minor mother be paid full benefits for herself and her child when she turns 18, no matter where she lives. Thus, as soon as the minor mother no longer fits the federal definition of a "dependent child," she receives AFDC money for herself and her child as a unit of two. Moreover, the Maryland regulation requires that a minor mother be paid full AFDC benefits for herself and her child as a unit of two if she does not live with her caretaker relative. Under such circumstances, because the . minor

10. In *Carleson* (at 599, 92 S.Ct. at 1933; footnote omitted), "California had adopted a regulation which specifically prohibited the payment of AFDC benefits to needy families where the absence of a parent was due to military service." 42 U.S.C. § 606(a), one of the parts of the Social Security Act, defines "dependent child" to include "one who has been deprived of parental support or care by reason of * * continued absence from the home [(citation omitted).] California construed 'continued absence' as not including military absence." (*Carleson* at 599, 92 S.Ct. at 1933.) California's said exclusion was held to contravene the Social Security Act.

See also *Longey v. Philbrook*, 438 F.Supp. 264, 267 (D.Vt.1977), in which Vermont's regulation rendering ineligible needy families owning more than one car violated federal statutory and regulatory standards.

11. "At issue is the validity of Alabama's so-called 'substitute father' regulation which denies AFDC payments to the children of a mother who 'cohabits' in or outside her home with any single or married able-bodied man. * * " *King v. Smith, supra* at 311, 88 S.Ct. at 2130. Mr. Chief Justice Warren held the Alabama regulation inconsistent with the Social Security Act.

12. 406 U.S. at 599–600, 92 S.Ct. at 1933–1934; 392 U.S. at 322–23, 333, 88 S.Ct. at 2135–2136, 2141.

13. The definition is set forth at n. 6 *supra*. The validity of that regulation is not challenged herein.

14. See n. 6 *supra*.

mother does not live with one or more caretaker relatives, she would not fit the federal definition of dependant child. Additionally, no economies of scale would be involved.

Plaintiffs assert that the "caretaker relative" should be the relative with primary responsibility for the daily care of the child, and that 45 C.F.R. § 233.90(c)(1)(v)(B) [15] mandates that conclusion. That is a plausible, possible interpretation of the regulation, but it is not the only one. Nor do federal law or regulations require that the mother of the child automatically receive caretaker relative status as to her child if she is the one responsible for the day-to-day care of the child. [16] Prior to the child's birth, the minor mother is a dependent child under the federal definition, if she lives in the home of someone who is her caretaker relative. As long as the minor mother is under 18 and living at home, she continues, after the birth of her child, to fit the federal definition of dependent child living with a caretaker relative. The fact that a minor mother or any dependent child may take care of herself does not mean that her caretaker relative is not her caretaker relative if the minor mother or other dependent child lives with that relative. If that were the case, no individual who lived with a caretaker relative but who took care of himself or herself could be considered a dependent child under the statute.

In *Mitchell v. Swoap*, 35 Cal.App.3d 879, 113 Cal.Rptr. 75 (1973), the Court dealt with a state regulation seemingly identical to the one challenged herein. The regulation in *Mitchell* required that a minor mother living at home with her family be counted, with her child, as two members of the larger AFDC unit. In other words, the minor mothers and their children were "included as additional 'children' on the welfare budgets of their mothers." *Id.* at 76. Justice Bray phrased the problem as follows (at 77–79):

The inquiry then is whether there are any specific provisions of the Social Security Act which require that under the circumstances here, plaintiffs and others in their class be given a fully independent AFDC grant. Plaintiffs have pointed out no such specific provision. * * *

Interpreting the above sections as applying to plaintiffs' babies, it is clear that the children are entitled to receive AFDC support and that the relative with whom they are living, in the sense of the act, are their grandmothers and not their mothers, who are also living with the grandmothers (plaintiffs' mothers) and for whom the grandmothers are also receiving support.

* * * [W]here the needy child is living in a home with relatives already receiving AFDC payments, an allowance for that child is less than if the child and his or her mother were living independently.

There is no express provision in the Social Security Act that states that a state may not, in providing AFDC to a needy child, take into consideration in fixing the amount to be awarded such child the fact that the relative or relatives with whom the child is living is already receiving AFDC awards. That a minor child becomes an unwed mother does not in any way change her status as a minor or her inclusion as a dependent child nor the inclusion of her child in the award to the person with whom both the mother and child are living. The amount of the grant for both is a matter entirely within the competence of the state to determine [citation omitted].

Appellants concede that the Social Security Act does not explicitly state which of the several relatives with whom a dependent child may reside shall be considered the "relative with who many [sic] dependent child is living" for purposes of determining AFDC eligibility. They contend that the mother of the child, when present, is necessarily that relative. However, the act itself does not reveal

---

15. *See* n.6 *supra.*

16. *See generally Dandridge*, 397 U.S. at 480, 90 S.Ct. at 1159.

any distinction between parents and other relatives.

\* \* \* \* \* \*

\* \* \* It is doubtful if Congress would have intended an eligible dependent child to be herself the relative with whom a further dependent child is living when she (the minor mother) is, in fact, an eligible dependent, and is receiving aid through her mother to be the relative with whom a further dependent child is living when the mother's mother who is, in fact, under a legal duty of care for the mother, maintains the home for the entire family and is receiving AFDC assistance on behalf of the entire family.

Plaintiffs cite five cases as supportive of their contentions that the Maryland regulation challenged herein violates the Supremacy Clause: *Roe v. Ray*, 551 F.2d 241 (8th Cir. 1977); *Martinez v. Trainor*, 435 F.Supp. 440 (N.D.Ill.1976), *app. dism'd* [as untimely], 556 F.2d 818 (7th Cir. 1977) (per curiam); *Gurley v. Wohlgemuth*, 421 F.Supp. 1337 (E.D.Pa.1976); *Morales v. Minter*, 393 F.Supp. 88 (D.Mass.1975); and *Lund v. Affleck*, 388 F.Supp. 137 (D.R.I. 1975). All of those cases are distinguishable from the case at bar.

*Morales* involved a Massachusetts statute which "bars from receipt \* \* \* all applicants not between the ages of 18 and 65. In effect, it establishes a conclusive and irrebuttable presumption that these persons are not in need of financial assistance from the Commonwealth." *Id.* at 96. The Court concluded (at 98) that the presumption was arbitrary and lacking in rationality. Contrasting the Massachusetts statute with the Maryland program involved in *Dandridge*, Judge Freedman wrote (at 101):

> [T]he Maryland welfare scheme in *Dandridge* was imperfect, but at least it provided *some* benefits to those who were eligible for AFDC.[18] In contrast, the statute before us today categorically de-

nies *any* aid to otherwise eligible residents of Massachusetts solely because of their age which, we repeat, is irrelevant to need. \* \* \* [Emphases in original.]

> [18] Before the Court reached the equal protection issue, it discussed whether Maryland's grant system violated § 402(a)(10) of the Social Security Act, 42 U.S.C. § 602(a)(10). In holding that it did not, the Court stated that "[s]o long as some aid is provided to all eligible families and all eligible children, the statute itself is not violated." *Dandridge v. Williams, supra*, 397 U.S. at 481, 90 S.Ct. at 1159. \* \*

In *Lund*, the challenged Rhode Island "unwritten informal policy" resulted in a denial of benefits to unwed mothers under 18 years of age "regardless of eligibility." 388 F.Supp. at 138. The defendants in that case "concede[d] that the operative effect of their policy is to deny 'AFDC' to persons otherwise eligible to receive it solely on the basis of age \* \* \*." *Id.* Under Rhode Island policy, if a minor mother were to live with her own mother (or another caretaker relative), the grandmother could apply for AFDC benefits for both her daughter and granddaughter. However, "if the grandparent for whatever reason refuses to apply, or if the minor child chooses to live outside that [her grandmother's] household, no 'AFDC' benefits will be available to the minor child or her offspring." *Id.* at 141. The Rhode Island policy was thus different from the Maryland regulation challenged herein, pursuant to which the minor mother is by definition a member of a larger AFDC unit which is already receiving AFDC benefits. Under that Maryland regulation, additional AFDC benefits will be paid to the AFDC unit for the child of the minor mother "regardless of whether assistance is requested on [its] behalf."[17] Furthermore, if the minor Maryland mother lives on her own, she receives AFDC benefits as the head of her family for herself and her child.[18]

---

17. See n. 6 *supra*.

18. Judge Pettine in *Lund* also indicated that a minor mother and child are a family for AFDC purposes and should receive benefits as such. Judge Pettine so stated after he had noted (*see*

body of this opinion *supra*) that the minor mother and her child were excluded from receiving any benefits at all if they did not live with a grandparent (for example), and that

*Roe v. Ray* involved an Iowa regulation under which a minor unwed mother living alone with her child could receive no AFDC benefits. To require that a payee be 18 or older was to "withh[o]ld * * * AFDC assistance from persons who are eligible under federal standards to receive it." 551 F.2d at 243.

In *Gurley*, plaintiffs attacked a Pennsylvania regulation pursuant to which two sisters who occupied the same dwelling unit with their respective children received a smaller AFDC grant than they would have done had they not occupied the same dwelling unit, since they were treated as one unit of five rather than two units of three and two each, and the larger the unit, the smaller the per capita grant. Each sister was over 18. The two families were separate and received separate checks. Each sister was the AFDC–designated caretaker relative for her own children, and had no AFDC relationship with the children of the other sister. Their sole connection was that they lived in the same dwelling unit. 421 F.Supp. at 1343. No determination had been made that income available to one family was available to the other, although the two sisters did indicate that they shared certain expenses. *Id.* Judge Becker, in holding the Pennsylvania regulation system violative of federal regulations promulgated under the Social Security Act, commented (at 1346–47):

> The focus of the [AFDC] program is on the child. The fact that two AFDC families decide to live together does not affect the rights of the children under the regulation. * * *
>
> * * * * * *
>
> * * * The AFDC specified relative only has an obligation to spend the funds to benefit the children for whom he or she is the specified relative, not to benefit some other AFDC child. The mere fact that the funds are received in the household by another AFDC recipient thus does not satisfy the requirements of the regulation.
>
> * * * * * * ▶
>
> The situation before us * * * differs from the *usual* situation where the state sets different levels of need for families of different sizes. In the latter case, all of the funds received go into the hands of one specified relative who can determine how to use them to maximize the benefit to his or her family through economies of scale. The same is not true where there are two recipients deciding on their own how to spend their share of the total grant. The state cannot assume that the resources are pooled so as to take advantage of economies of scale.

(Emphasis supplied.) The case at bar, unlike *Gurley*, presents the "usual situation."

*Martinez* involved an Illinois regulation pursuant to which a mother under 18 who lived alone with her child was denied any benefits whatsoever absent what Judge McMillen termed "a selective 'special administrative approval' policy," a policy "the very existence" of which he held "inconsistent with the Social Security Act." 435

such an exclusion violated the Social Security Act. Judge Pettine specifically wrote as follows (at 141–42):

> For "AFDC" purposes the dependent child and mother are a family eligible for benefits if the requisite need exists and such right is in no way altered by the mother's age. The discretionary power of this administrative agency to make individual determinations may at times be inevitable in certain areas of the Social Security Act. However, in going beyond the statute itself it has imposed a subjective standard obliquely encompassing grandchildren into the household of a grandparent as part of such grandparent's responsibility to the daughter by arbitrarily ignoring

the Congressional criteria of eligibility for "AFDC" benefits. This policy engrafts onto the Act a nonexistent age requirement which this Court cannot recognize.

Judge Pettine's comment as to the separate family status of the child and mother was seemingly not necessary to his holding that the Rhode Island policy conflicted with the Social Security Act. To the extent that Judge Pettine has indicated that under all circumstances, including those in this case, the child and mother must be treated separately from the family unit in which the mother is herself a dependent, regardless of where or with whom the child and her mother reside, this Court, with all deference, is not in accord with that view.

F.Supp. at 445.[19] That Illinois regulation did provide, however, as does the Maryland regulation herein, that a minor mother residing with her caretaker relative was ineligible to serve as a caretaker relative, but rather would be included in the AFDC grant of her caretaker relative. The amount of AFDC aid allocated for the minor mother and her child was lower if the minor mother and child lived with the minor mother's caretaker relative rather than by themselves. 435 F.Supp. at 443–44.

Judge McMillen held that regulation, which he interpreted as withholding caretaker relative status from a minor mother solely on the grounds of her age, to be inconsistent with §§ 602(a)(10) and 606(a) and (c). Id. at 443–44. The state had offered three purposes for the regulation (at 445):

> 1) to insure that minor mothers are capable of managing a public assistance grant; 2) to reduce unnecessary welfare expenditures where a minor mother resides with older relatives receiving AFDC and is thereby able to share certain resources; and 3) to maintain family unity by encouraging minor mothers to stay with their older relatives and avoiding additional illegitimate pregnancies at any early age.

The Court found none of those rationales to be valid.

This case is distinguishable from Martinez on several grounds. In Maryland, a minor mother who lives alone with her child receives full AFDC benefits as a family unit of two. Thus, there is no restriction against minors as such, and no eligible individual is denied benefits altogether. Minor mothers are not compelled to choose either living with a caretaker relative or receiving no AFDC benefits. Illinois, in Martinez, offered economies of scale as one of its reasons for its refusal to pay AFDC benefits to minor mothers living alone with their children, and implied that such economies were a reason for compelling minor mothers to live with another caretaker relative instead of living on their own. By contrast, Maryland's program does involve those economies of scale which the Court in Dandridge found to be inherent and viewed as an appropriate reason for lower per capita benefits for larger families—but Maryland does not allow economies of scale to control in the end, because, unlike Illinois, Maryland pays full AFDC benefits to a minor mother living alone with her child, and only takes advantage of economies of scale when the minor mother chooses to live with her caretaker relative.

In sum, this Court concludes that the Maryland program challenged herein is not inconsistent with applicable federal law and regulations.

*The Constitutional Claims*

Having so determined, this Court, in accordance with the teachings of Hagans, turns next to plaintiffs' equal protection and due process contentions.

■ Plaintiffs assert that the program creates two classes of individuals in violation of the Equal Protection Clause. Those classes consist of (1) minor parents under 18 who live with their own caretaker relatives and who are ineligible to receive separate AFDC checks and (2) parents over 18 who, regardless of where or with whom they live, receive separate AFDC checks as caretaker relatives. Plaintiffs argue that that distinction is solely one of age, and that there is no rational basis for it. However, that distinction between parents under 18 and parents over 18, when both sets of parents live with the caretaker relatives of the parents or the persons who were formerly the caretaker relatives of the parents, is a distinction in fact drawn by federal law, and not by Maryland, because it is the federal statute which defines dependent child for AFDC purposes as a child under 18.

■ Plaintiffs further contend that the Maryland program violates principles of

---

**19.** Judge McMillen so held even though a number of such administrative approvals had been in fact granted although they had been denied to two of the seven named plaintiffs. 435 F.Supp. 443–44.

procedural due process by creating an irrebuttable presumption that parents under 18 who live with their caretaker relatives are not capable of being caretaker relatives themselves. Minor parents who live at home have no opportunity, under the Maryland program, of rebutting that presumption by proving that they can indeed function as caretaker relatives.

The Supreme Court has on several occasions analyzed classifications made in connection with welfare programs, in terms of applicable federal constitutional provisions. Thus, in *Dandridge v. Williams*, 397 U.S. 471, 484–86, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), Mr. Justice Stewart commented:

> [H]ere we deal with state regulation in the social and economic field, not affecting freedoms guaranteed by the Bill of Rights, and claimed to violate the Fourteenth Amendment only because the regulation results in some disparity in grants of welfare payments to the largest AFDC families. * * *
>
> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." [Citation omitted.] "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." [Citation omitted.] "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." [Citation omitted.]

Last Term, in *Califano v. Boles*, 443 U.S. 282, 284–85, 99 S.Ct. 2767, 2770, 61 L.Ed.2d 541 (1979), Mr. Justice Rehnquist wrote, in the course of dealing with Social Security benefits and thus line-drawing on a federal rather than a state level:

> In light of the specific dislocations Congress wishes to alleviate, it is necessary to define categories of beneficiaries. The process of categorization presents the difficulties inherent in any line-drawing exercise where the draftsman confronts a universe of potential beneficiaries with different histories and distinct needs. He strives for a level of generality that is administratively practicable, with full appreciation that the included class has members whose "needs" upon a statutorily defined occurrence may not be as marked as those of isolated individuals outside the classification. "General rules are essential if a fund of this magnitude is to be administered with a modicum of efficiency, even though such rules inevitably produce seemingly arbitrary consequences in some individual cases." [Citation omitted.] A process of case-by-case adjudication that would provide a "perfect fit" in theory would increase administrative expenses to a degree that benefit levels would probably be reduced, precluding a perfect fit in fact. [Citation omitted.]

In this case, plaintiffs contend that the different treatment of parents under 18 and parents over 18 bears no rational relationship to any state goal. However, the manner in which the Maryland program operates indicates that it is not solely the age of the minor mother which determines the level of benefits she will receive, but rather her age combined with where she chooses to live. A minor mother who does not live as a member of a larger AFDC unit will receive full benefits as an adult for herself and her child. It is only when the minor mother chooses to live as a member of a larger AFDC unit that the format of the benefits changes. It is true that a parent who is under 18 who lives as part of a larger AFDC unit will be treated as a dependent child, and the benefits for her child will be entrusted to the parent's adult caretaker, while a parent who is over 18 and who continues to live with the relative who was formerly her caretaker relative will receive benefits as an adult and as a caretaker. But, as noted *supra*, the drawing of that line at 18 was not so much the work of Maryland as the work of the federal government itself: the age classification is

set forth in the Social Security Act itself. As *Califano v. Boles* stresses, formulation of welfare programs, as a practical fact of life, causes some degree of line-drawing. Where to draw such lines is sometimes a matter the Congress itself determines. At other times, Congress assigns that task to the states. In any event, regardless of whether the line is determined at the federal or the state level, it is not for a federal court to question the wisdom of where the line is drawn. The drawing of the line in the Maryland regulation at age 18—a drawing challenged by plaintiffs on both equal protection and procedural due process bases—deprives no eligible persons of AFDC benefits. Further, that line-drawing could well have been adopted as a workable way of taking advantage of economies of scale while at the same time remaining within the boundaries set by the Congress in the Social Security Act. In any event, such a rationale is one possible "state of facts [which] reasonably may be conceived to justify [the Maryland action challenged herein]." *Dandridge v. Williams, supra* at 486, 90 S.Ct. at 1161.

▆ Plaintiffs raise a further equal protection claim, *i. e.*, that Maryland pays AFDC benefits to all parents over 18 as if the parent and child were an independent unit even when such is not the case. That means that the state pays as-if-independent benefits to some parents who fit the social security definition of dependent child, *i. e.*, those who live at home, are between 18 and 21, and are students. That treatment indicates that under some circumstances a person can be a dependant and the caretaker of another at the same time. But such treatment of a person over 18 does not require Maryland to afford the same to a minor mother under 18 who lives at home.[20]

Plaintiffs' additional constitutional claim is that Maryland has created an irrebuttable presumption that a minor mother can-

not be a caretaker relative if she continues to live with her own caretaker relative. The Supreme Court discussed the applicability of the irrebuttable presumption doctrine in the social security field in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). In that case, the Court dealt with a Social Security law which defined "widow" to exclude from social security benefits someone who had been married to the covered wage earner less than six months prior to his death. The presumption was that a marriage entered into less than six months prior to the death of the wage earner was a sham. That presumption was irrebuttable. *Id.* at 768, 95 S.Ct. at 2468.

The Court distinguished the line of cases which included *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); *Cleveland Board of Education v. La Fleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), and similar cases in which irrebuttable presumptions had been held invalid. In so doing, Mr. Justice Rehnquist stated (422 U.S. at 772, 95 S.Ct. at 2470):

> [T]he benefits here are available upon compliance with an objective criterion, one which the Legislature considered to bear a sufficiently close nexus with underlying policy objectives to be used as the test for eligibility. * * * [A]ppellees are completely free to present evidence that they meet the specified requirements; failing in this effort, their only constitutional claim is that the test they cannot meet is not so rationally related to a legitimate legislative objective that it can be used to deprive them of benefits available to those who do satisfy that test.

The Justice continued (at 777, 784–85, 95 S.Ct. at 2472, 2476):

> [T]he question raised is not whether a statutory provision precisely filters out those, and only those, who are in the

---

**20.** The state regulation concerning the status of mothers between 18 and 21 who are full-time students and live at home is somewhat unclear. The parties agree, however, that such mothers may choose either to be counted, with their children, as members of the larger AFDC unit or to be considered, with their children, as separate units. The State seemingly does not classify full-time student mothers between 18 and 21 either as dependent children or as adults, but rather leaves the choice of status to the individual mother involved.

factual position which generated the congressional concern reflected in the statute. Such a rule would ban all prophylactic provisions * * *. Nor is the question whether the provision filters out a substantial part of the class which caused congressional concern, or whether it filters our more members of the class than non-members. The question is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule. We conclude that the duration-of-relationship test meets this constitutional standard.

\* \* \* \* \* \*

The administrative difficulties of individual eligibility determinations are without doubt matters which Congress may consider when determining whether to rely on rules which sweep more broadly than the evils with which they seek to deal. In this sense, the duration-of-relationship requirement represents not merely a substantive policy determination that benefits should be awarded only on the basis of genuine marital relationships, but also a substantive policy determination that limited resources would not be well spent in making individual determinations. It is an expression of Congress' policy choice that the Social Security system, and its millions of beneficiaries, would be best served by a prophylactic rule * * * which is also objective and easily administered.

The Constitution does not preclude such policy choices as a price for conducting programs for the distribution of social insurance benefits. * * * There is * * * no basis for our requiring individualized determinations when Congress can rationally conclude not only that generalized rules are appropriate to its purposes and concerns, but also that the dif-ficulties of individual determinations outweigh the marginal increments in the precise effectuation of congressional concern which they might be expected to produce.

The Fourth Circuit examined the irrebuttable presumption doctrine as applied to certain medicare provisions in *Fairfax Hospital Association v. Califano*, 585 F.2d 602 (4th Cir. 1978). Therein, Judge Russell spoke as follows (at 608–09) (footnotes omitted):

The doctrine of impermissible irrebuttable or conclusive presumption has been justly criticized as of doubtful constitutional antecedents and of limited application. It has been aptly observed that if the doctrine were strictly applied, it would "severely restrict the ability of legislatures to draft statutes that [can] be effectively administered," and would operate as "a virtual engine of destruction for countless legislative judgments which have heretofore been thought wholly consistent with the Fifth and Fourteenth Amendments to the Constitution." * * [I]t has been suggested that courts should "abandon [their] 'war on irrebuttable presumptions' as theoretically unsound and practically unworkable."

Nor has the doctrine been given more than a limited application by courts. * * In *Weinberger v. Salfi*, the Court * * proceeded to dismiss the irrebuttable or conclusive presumption doctrine as entirely inapposite in reviewing for constitutionality statutes or regulations involved in "social welfare legislation * * *."

Maryland's program under attack in this case passes muster under both of plaintiffs' constitutional claims. When a minor mother lives with her caretaker relative after she has had a child, there will be inherent economies of scale of which the state regulation seeks to take advantage. When a minor mother lives alone with her child, she is fully as needy as an adult parent, and the state regulation treats her as such. When a minor mother turns 18, she no longer fits the definition of a dependent child, and will no longer be entitled to receive any AFDC

benefits through a caretaker relative. The state thus treats such a parent as an adult as soon as she turns 18. The classifications created by Maryland—which are all that plaintiffs challenge herein—are rationally related to permissible state goals. With regard to the irrebuttable presumption doctrine, there is seemingly no irrebuttable presumption that a minor mother cannot serve as a caretaker relative: a minor mother who lives alone with her child will receive full benefits as though an adult. The only irrebuttable presumption (to the extent that one exists herein) is seemingly that a person who fits the federal definition of a dependent child must in fact be treated as one. That command to the State of Maryland has been fully heeded by the state. Having so done, Maryland has made choices which accord both with the statutory requirements of the federal legislation and with the equal protection and procedural due process standards of the Constitution. Accordingly, defendants are entitled to judgment in this case.